**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **TERRANCE VONJUR BUTLER,** | : | **Case No. 3:25-cv-207** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **vs.** | : | **Judge Thomas M. Rose** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| | : | |
| **WARDEN, PICKAWAY** | : | |
| **CORRECTIONAL INSTITUTION** | : | |
| | : | |
| **Respondent.** | : | |

**REPORT AND RECOMMENDATIONS**

Terrance Vonjur Butler, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF No. 1-1, 6), the Return of Writ (ECF No. 9), and the state court record (ECF No. 8, 8-1, 8-2). For the reasons that follow, it is **RECOMMENDED** that this action be **DENIED** and **DISMISSED**.

## I.     FACTUAL BACKGROUND

On June 25, 2021, a Montgomery County, Ohio, grand jury indicted Butler on seventeen counts, including two counts of murder, multiple counts of felonious assault, multiple counts of discharge of a firearm on or near prohibited premises, multiple counts of having weapons while under disability, and a single count of involuntary manslaughter. All the charges, except for having weapons while under disability, had corresponding 3-year and 54-month firearm specifications attached. (ECF No. 8 at PageID# 71-88, 243.) The following represents the relevant facts and procedural history as reported by Ohio's Second District Court of Appeals ("Court of Appeals"):

{¶2} On June 15, 2021, Butler and Marquan Cooper both attended a family birthday party at the house of Marquan's sister, Chanea Printup. The two had known each other for years as Butler had dated and had a baby with another one of Marquan's sisters, Markesia Printup. Mizette Printup (Marquan, Chanea, and Markesia's sister) and her fiancé, Deja Hatfield, were also in attendance, as were Marquan's girlfriend, Tailyn Goodman, and their young son.

{¶3} At some point during the gathering, Butler and Marquan began arguing. Tensions got so high that, to diffuse the volatile situation, Markesia insisted that she, Butler, and their child leave the party. After initially refusing, Butler finally agreed to get in the car and go. In the car, however, Butler was still upset; he and Marquan continued to exchange calls and texts, including the following exchange:

> Marquan: I'll smoke you on my mama.
> Butler: Pull on up. Pull on up.

{¶4} Markesia drove Butler to the Taco Bell at Leo Street and Stanley Avenue to allow time for things to simmer down; she did not want to go home because she knew Marquan and Butler would fight. She told the court that after they parked, Butler pulled the keys out of the ignition and removed their house key from the key chain. He threw the car keys back to Markesia and took off on foot.

{¶5} At some point after leaving Markesia and their son in the parking lot, Butler met up with his nephew, Tevon. They drove to Butler's house on Notre Dame Avenue and parked on the street. Security camera footage showed that Butler got out of the car and went inside the house. He emerged a short time later carrying a gun that he then deposited in Tevon's car. Butler spent the next few minutes loitering in the street, waiting for Marquan to show up. When Marquan arrived a short time later, he parked his car in the middle of the street and charged at Butler. Mizette, Deja, and Tailyn, who were also in the car, exited to watch the fight.

{¶6} Surrounded by family and friends, Marquan and Butler fought up and down the street and, later, in the front yard. No one made an effort to break up the fight. After several minutes, Marquan decided it was over and returned to his car with Tailyn. As the car began to drive in reverse back up the street to leave, Mizette and Deja realized that they were being left behind and began running to catch up. Meanwhile, Butler returned to Tevon's car, retrieved his firearm, and, standing in the middle of the street, unloaded ten rounds in the direction of the fleeing car.

{¶7} Two of the bullets hit the windshield of the car carrying Marquan, Tailyn, and their child. One round hit Mizette in the back of the neck as she ran to catch up. She immediately fell to the ground. Tailyn testified that she heard Marquan scream "He shot my sister," before jumping out of the car to tend to Mizette. Butler left the scene in Tevon's light-colored Chrysler.

2

{¶8} First responders arrived within minutes. Mizette was in grave condition. Officer Joseph Sheen from the Dayton Police Department arrived first and found people in the street crowded around Mizette. He told the court that the victim was non-responsive when he got there; she was barely breathing and had no pulse. Kayla Rike, a paramedic with the Dayton Fire Department, testified that when she arrived, officers were doing CPR on Mizette. She was immediately intubated and Rike began breathing for her. Rike confirmed that upon arrival at Miami Valley Hospital, Mizette had no pulse.

{¶9} Mizette never regained consciousness and succumbed to her injuries several days later. Dr. Susan Brown, a forensic pathologist at the Montgomery County Coroner's Office performed the autopsy. She testified that Mizette had an entrance wound on the back of her neck and that the bullet traveled through the soft tissue of the neck and into her spine. It then went through the left vertebral artery and came to rest on the left side of her neck. There was no exit wound. Dr. Brown told the court that injuring the vertebral artery (which supplies blood to the brain) would result in a stroke and that the spinal cord injury would have resulted in difficulty breathing. The cause of death was determined to be a gunshot wound to the neck.

{¶10} Detectives who arrived on the scene had been informed that the suspect, Butler, had fled in a light-colored Chrysler. The investigation eventually led detectives to believe that Butler was staying at an apartment at the Meadows of Catalpa complex in Dayton. He was arrested there without incident. As he was being led to a police cruiser, Butler asked Detective David House where Mizette was shot and if she was dead. A search of the apartment located a Glock model 32 .357 caliber firearm hidden in a shoebox. Further testing confirmed that the spent casings found at the scene had been fired from that weapon.

{¶11} …After two unsuccessful motions to suppress, Butler waived his right to a jury, and the case proceeded to a bench trial on February 13 and 14, 2023.

{¶12} At trial, the State presented testimony from various family members, first responders, law enforcement, and the forensic pathologist. The court also considered numerous exhibits, including autopsy photos and videos of the fight and shooting. Butler testified in his own defense. He presented the court with rap videos made by Mizette and Marquan which showed Marquan with a gun. About a week after the trial concluded, the court reconvened to announce its verdict of guilty on all counts and specifications.

{¶13} After addressing merger issues, the State elected to proceed on the "enhanced" firearm specifications. Butler was sentenced to an aggregate prison term of 27 years to life and ordered to pay nearly $13,000 in restitution. . . .

*State v. Butler*, 2023-Ohio-3504, ¶ 2-12; (ECF No. 8 at PageID# 241-244).

3

Butler appealed his conviction to the Court of Appeals (*id.* at PageID# 180-218), asserting two assignments of error:

(1) The trial court erred by finding that the state proved beyond a reasonable doubt that Butler did not use deadly force in self-defense.

(2) Butler's convictions for felonious assault on Mizette Printup and Deja Hatfield were not supported by sufficient evidence.

(*Id.* at PageID# 183). On September 29, 2023, the Court of Appeals issued a decision affirming Butler's conviction. *State v. Butler*, 2023-Ohio-3504; (ECF No. 8 at PageID# 240-255).

Butler filed a pro se motion with the Ohio Supreme Court to file a delayed appeal. (*Id.* at PageID# 258-277). His motion was granted. (*Id.* at PageID# 278). Butler subsequently filed a memorandum in support of jurisdiction, repeating the two errors raised with the Court of Appeals as his propositions of law. (*Id.* at PageID# 279-291). On June 11, 2024, the Ohio Supreme Court declined jurisdiction. (*Id.* at PageID# 292).

## II.    FEDERAL HABEAS PROCEEDINGS

On June 17, 2025, Butler filed his federal habeas petition, which asserts three grounds for relief.  They are:

**GROUND ONE**:     The trial court erred by finding that the state proved beyond a reasonable doubt that Butler had not used deadly force in self-defense.

**Supporting Facts:**     It is clear that when a criminal defendant raises the issue of self-defense it is the State of Ohio/Prosecution burden of proving beyond a reasonable doubt that the defendant was (1) at fault in creating the situation giving rise to the situation; and (2) that the defendant did not believe that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force, and (3) that the defendant must not violated [*sic*] any duty to retreat or avoid danger. It is clear from the record that Cooper made a clear and precise verbal threat that he would kill the defendant/petitioner. Cooper used language

4

that was clear to the defendant/petitioner and everyone else present that his intentions was [sic] to kill the defendant/petitioner. His record will show that the defendant/petitioner clearly felt that his life was in imminent danger, and the record will show that the defendant/ petitioner did in fact retreat[]. Mr. Cooper and others came to the defendants/ petitioner residence to do him bodily harm and/or to kill the defendant/petitioner. The defendant/petitioner is an average citizen and didn't not hold any position of trust [and] was not a police officer, nothing of the sort. So, when an individual like Mr. Cooper threatens a judge (Honorable Judge Anthony Capizzi) the defendant had to take Mr. Cooper serious[ly]. The record will reflect that the defendant used the same amount of force as Mr. Cooper used.

**GROUND TWO:** Butler's conviction[s] for felonious assault on Mizette Printup and Deja Hatfield were not supported by sufficient evidence.

**Supporting Facts:** After reviewing the evidence and the record it is clear that any rational trier of fact should have found that the elements of felonious assault could [sic] be proven beyond a reasonable doubt. The defendant/petitioner was charged with felonious assault on five individuals with each carrying a 3-year firearm specification & w/Fifty-four-month firearm specifications. It is clear from the record that the defendant/petitioner did not plan, nor intend to cause the death of Ms. Mizette, nor did the defendant/petitioner plan to, or intend to hurt Ms. Mizette. The defendant/petitioner['s] clear intention was to protect himself from any harm from Mr. Cooper and his friends and family. The State of Ohio failed to prove beyond a reasonable doubt the defendant/petitioner knowingly and purposedly pointed, aimed, or shot at Ms. Mizette and Deja Hatfield . . . neither of these two individuals [were] in the line of fire so as to show that the defendant/petitioner acted with the requisite intent to harm them. It is very clear that the defendant/petitioner was in fear of his life and Ms. Mizette Printup and Deja Hatfield [were] not the intended targets of the s[h]ots that were fired the day in question. It is clear that the evidence is insufficient that proves that the defendant/petitioner knowingly[] intended or attempted to cause serious physical harm to Ms. Mizette and Deja Hatfield.

5

**GROUND THREE:** The State of Ohio violated the defendant's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and Article 1, Section 10 of the Ohio Constitution when it denied the motion to suppress.

**<u>Supporting Facts:</u>** During the interrogation of the defendant/petitioner by the Dayton Police Detectives it was clear that he did not knowingly and intelligently waive his Miranda rights. It is clear from the record that the defendant/petitioner did not sign the bottom of the Waiver of Rights, nor did he know that there was a place for him to sign if he even wanted to. The defendant/petitioner never once stated that he wanted to speak with the Dayton Police Detectives during any time/portion of the interrogation. Therefore, since the defendant/petitioner never understood the Miranda rights and/or waiver of such[,] the obtained statements [are] fruits of the poisonous tree. On June 16, 2021, multiple officers including the Dayton Police Department arrived at the defendants/petitioner's apartment [and] illegally forced the defendant/petitioner out of his home. This is a clear violation of the Fourth Amendment where the defendant/petitioner had the "right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The search of the defendant's/petitioner home/apartment was an unconstitutional search.

(ECF No. 1-1 at PageID# 21, 24, 26 (format altered to fit this Opinion and Order); ECF No. 6 at PageID# 52, 55, 57).

Respondent filed a Return of Writ arguing that Butler's claims are procedurally defaulted, not cognizable in federal habeas review, or lack merit. (ECF No. 9). Butler has not replied to Respondent's procedural defenses.

## III. STANDARDS OF REVIEW

### A. AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a

formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." (cleaned up)).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## B. Procedural Default

In recognition of the equal obligation of the state courts to both protect the constitutional rights of criminal defendants and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for

purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

9

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*, 785 F.2d 135)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default, or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at 669; *see also Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright*, 433 U.S. at 87.

## IV.    DISCUSSION

### A.  Procedural Default—Ground Three

Respondent argues that Ground Three is procedurally defaulted because Butler failed to present it to the Ohio state courts. (ECF No. 9 at PageID# 773). The Court agrees. To exhaust state court remedies, a claim must be fairly presented "to every level of the state courts in one full round." *Ambrose v. Romanowski*, 621 F. App'x 808, 814 (6th Cir. 2015). A petitioner may procedurally default a claim by failing to raise it in state court and failing to pursue that claim through the state's "ordinary appellate review procedure." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner

10

to raise the claim, the claim is procedurally defaulted all the same. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

The record reflects that Ground Three was not part of Butler's direct appeal. "[I]f an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted." *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). Butler's motion to suppress, the subject of Ground Three, was litigated prior to his trial and could have been raised on direct appeal. (ECF No. 8 at PageID# 92–102, 133–36; ECF No. 8-2 at PageID# 319–92). For this reason, Ground Three is procedurally defaulted. Butler offers no potential excuse for the procedural default. In any event, as explained below, Ground Three also fails because it is not cognizable in federal habeas review.[1]

## B. Merits Review

### i.     *Ground One*

In Ground One, Butler contends that the trial court erred in finding beyond a reasonable doubt that he did not use deadly force in self-defense. (ECF No. 1-1 at PageID# 21; ECF No. 6 at PageID# 52). Respondent argues that Ground One is not cognizable in federal habeas review. (ECF No. 9 at PageID# 773-774). The Court agrees.

At trial, Butler testified that he was "scared for his life." (ECF No. 8-2 at PageID# 683). Butler testified that he saw Marquan Cooper with a gun at the party before the shooting (*id.* at PageID# 679) and he believed Cooper was going to kill him based on the text message, "I'm gonna smoke you on my mama." (*Id.* at PageID# 678). Butler testified that when Cooper went to his car,

---

[1] Respondent also argues that Butler procedurally defaulted Ground One because he failed to fairly present a constitutional claim to the Ohio state courts. (ECF No. 9 at PageID# 773, 775). The Court need not address whether Butler's appellate arguments were sufficient to put the state courts on notice of a constitutional claim because, as discussed below, Ground One is not cognizable in federal habeas review.

11

Butler believed Cooper was retrieving a gun (*id.* at PageID# 682), so he fired shots in Cooper's direction to scare him away. (*Id.*).

The trial court, who was the trier of fact, found beyond a reasonable doubt that Butler did not use deadly force in self-defense. (*Id.* at PageID# 744). The Court of Appeals affirmed that decision, finding that the evidence in Butler's case did not meet the requirements of Ohio's self-defense statute. (ECF No. 8 at PageID# 244-248).

The Sixth Circuit has explained that a claim that the prosecution failed to disprove self-defense beyond a reasonable doubt is not cognizable in federal habeas review:

> "Proof of the nonexistence of all affirmative defenses has never been constitutionally required." *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999), abrogated on other grounds by *Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

*Woodmore v. Tanner*, No. 25-1085, 2025 WL 2120570, at *3 (6th Cir. July 8, 2025). Self-defense is an affirmative defense in Ohio. *See State v. Messenger*, 171 Ohio St. 3d 227, 233 (2022). Thus, Ground One does not implicate the constitution and is not cognizable in federal habeas review. *See, e.g.*, *Warth v. Warden*, No. 1:24-CV-00549, 2026 WL 1026708, at *5 (S.D. Ohio Apr. 16, 2026) ("There is simply no Supreme Court decision which holds that self-defense is a protected federal constitutional right."); *Hayes v. Horton*, 596 F. Supp. 3d 978, 989 (E.D. Mich. 2022) (citing *Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Petitioner's claim not cognizable on habeas review . . . "[i]n those States in which self-defense is an affirmative defense to murder, [because] the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt.").

12

To the extent that Butler asserts that the prosecution failed to disprove that he acted in self-defense beyond a reasonable doubt as a matter of state law, he fails to state a claim upon which relief may be granted. Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

For these reasons, Ground One should be dismissed because it is not cognizable in federal habeas review.

ii.      *Ground Two*

In Ground Two, Butler contends that there was insufficient evidence to convict him of felonious assault on Deja Hatfield and Mizette Printup in violation of Ohio Rev. Code § 2903.ll(A)(l)–(2). (ECF No. 1-1 at PageID# 24; ECF No. 6 at PageID# 55). Specifically, Butler claims that the evidence demonstrates that neither of these victims were the intended targets. (*Id.*).

The Court of Appeals rejected the same argument on direct appeal:

{¶30} A person is guilty of felonious assault if he or she knowingly (1) causes serious physical harm to another or another's unborn, or (2) causes or attempts to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance. R.C. 2903.ll(A)(l)-(2). On appeal, Butler's argument seems to be that he should not have been found guilty of felonious assault because he had been aiming for Marquan and therefore had not knowingly fired at Deja and Mizette or knowingly caused serious physical harm to Mizette. This argument fails under the weight of the transferred intent doctrine.

{¶31} "The doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person." *State v. McComb*, 2d Dist. Montgomery No. 29111, 2022-Ohio-1423, ¶37, quoting *State v. Free*, 2d Dist. Montgomery No. 15901, 1998 WL 57373, *10 (Feb. 13, 1998) (applying transferred intent to felonious assault and holding that it applies to crimes requiring a mens rea of knowingly).

{¶32} Here, there is no doubt that Butler knowingly shot at Marquan but hit Mizelle instead. He testified that, "I wasn't aiming at nobody in particular but 'Quanny.' I aimed in his direction and unfortunately Mizelle got shot and the car got shot." Trial

Tr. at 381.[2] His intent to shoot Marquan was transferred to Mizette. Even Butler's trial attorney agreed: "As [it] relates to the death of Mizette, I think transferred intent applies." Trial Tr. at 412.[3] She suffered serious physical harm when Butler knowingly fired at Marquan. The felonious assault conviction as it relates to Mizette was supported by sufficient evidence.

{¶33} The felonious assault charge related to Deja fell under R.C. 2903.ll(A)(2) (causes or attempts to cause physical harm to another by means of a deadly weapon) because she was not struck by a bullet. Butler asserts that his intent to shoot Marquan should not attach to Deja because she was not in the line of fire when he shot at Marquan. He claims that this case is similar to *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992), in which the Ohio Supreme Court vacated a felonious assault conviction. The *Mills* Court reasoned that there was insufficient evidence to support felonious assault because the victim was "not in the line of fire when the gunman entered and [then she] hid underneath her desk during the remainder of the robbery"; therefore the State could not show a knowing attempt to cause physical harm. *Id.* at 369. The case at bar presented a much different story. Security footage (Exhibit 12B) showed Marquan's car driving in reverse up the street with Deja and Mizette running side-by-side trying to catch up. According to the video, the two women were no more than a few feet apart when Butler began to shoot in their direction and when Mizelle was struck in the back of the neck. Mizelle was clearly in the line of fire, and Deja's close proximity to Mizelle supported the conclusion that she was too. The doctrine of transferred intent applied here as well.

{¶34} Butler's convictions for felonious assault against Mizette and Deja were based on sufficient evidence. The second assignment of error is overruled.

*State v. Butler*, 2023-Ohio-3504, ¶ 30-34; (ECF No. 8 at PageID# 248–51).

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court held in *Jackson* that, because the Due Process Clause requires the state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[2] ECF No. 8-2 at PageID# 699.

[3] ECF No. 8-2 at PageID# 730.

14

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the state need not rule out every hypothesis except that of guilt

beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record

of historical facts that supports conflicting inferences must presume—even if it does

not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of

the prosecution and must defer to that resolution." *Id.*; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th

Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the

evidence and to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319.

Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the

credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise

substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *United States v. Fisher*, 648

F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

Federal habeas review of a claim challenging the sufficiency of the evidence is even further

limited. As the Sixth Circuit explained in *Brown*, the federal habeas court is "bound by two layers

of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d

at 205. The federal habeas court must defer not only to the trier of fact's findings as required

by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's*

sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *Davis v.*

*Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). The Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary
> showings would be sufficient to convince us of the petitioner's guilt. We cannot
> even inquire whether *any* rational trier of fact would conclude that petitioner . . . is
> guilty of the offenses for which he was charged. Instead, we
> must determine whether the Ohio Court of Appeals itself was unreasonable

15

> in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

567 F.3d at 205 (emphasis in original).

Butler asks the Court to do two things that are not allowed in federal habeas review: (1) substitute a different interpretation of the evidence presented at his trial, *see Brown*, 567 F.3d at 205, and override the Court of Appeals' interpretation of Ohio law, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). While Butler argues that he should not have been found guilty of felonious assault because Printup and Hatfield were not his intended victims, the Court of Appeals found that Ohio's doctrine of transferred intent applies. The Court is bound to defer to the Court of Appeals' interpretation of Ohio law and its reasonable conclusion that sufficient evidence was presented to sustain the convictions for felonious assault.

The Court of Appeals' dismissal of Butler's sufficiency of the evidence claim was neither contrary to nor an unreasonable application of federal law. For these reasons, Ground Two is without merit and should be dismissed.

### iii.    *Ground Three*

In Ground Three, Butler contends that his Fourth, Sixth, and Fourteenth Amendment rights were violated when the trial court denied his motion to suppress. (ECF No. 1-1 at PageID# 21; ECF No. 6 at PageID# 52).  Based on the substance of his contentions, the Undersigned reads the claim in Ground Three to be based on the Fourth Amendment.  In addition to the procedural default discussed above, Ground Three should be dismissed because it is non-cognizable in federal habeas review.

On July 13, 2021, Butler filed a motion to suppress the evidence obtained from a warrantless search of his home and to suppress his statement to police, which he argued violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). (ECF No. 8 at PageID# 92–102). On June 24, 2022, the trial court held an evidentiary hearing on Butler's motion, taking testimony from Detective David House, Detective David Posma, and Detective Angela Woody. (ECF No. 8-2 at PageID# 319–92). On October 20, 2022, the trial court denied Butler's motion to suppress. (ECF No. 8 at PageID# 133–36). Butler did not challenge the denial of his motion to suppress in his direct appeal.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). As clearly established precedent explains, *Powell*'s "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

The *only* relevant question for this federal habeas Court is whether Butler was given a chance to present his Fourth Amendment claim to the Ohio state courts. Butler filed a motion to suppress, and the trial court held an evidentiary hearing before denying the motion. Butler was not denied the opportunity to appeal. Butler was not denied an opportunity to present his claim in state courts and, as a result, Ground Three is not cognizable in federal habeas corpus review.

17

Ground Three should be dismissed because it is procedurally defaulted and alternatively, is non-cognizable in federal habeas review.

## V.    CONCLUSION

For the reasons stated, Butler's claims do not have merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1-1, 6) be **DENIED** with prejudice;

2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "valid claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); 28 U.S.C. § 2253(c) ("A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and the Court should therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**PROCEDURE ON OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED.**

May 15, 2026
_____

*s/ S. Courter M. Shimeall*
_____
S. Courter M. Shimeall
UNITED STATES MAGISTRATE JUDGE

19